# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

LAURA STRZELECKI,

    *Plaintiff*,

v.                                    CASE NO. 08-CV-15171

COMMISSIONER OF              DISTRICT JUDGE GERALD E. ROSEN
SOCIAL SECURITY,               MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

**I.    RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

**II.    REPORT**

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for Supplemental Security Income (SSI)

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf.  This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

benefits. This matter is currently before this Court on cross-motions for summary judgment. (Docs. 26, 32.)

Plaintiff was 51 years of age at the time of the most recent administrative hearing. (Supp. Tr., ECF 31 at 6, 13.)[2] Plaintiff's employment history includes work as a cleaning lady, waitress, and day care worker. (Tr. at 282.) Plaintiff filed the instant claims on January 19, 2005, alleging that she became unable to work on February 24, 2002. (Tr. at 181.) The claim was denied at the initial administrative stages. (Tr. at 37.) In denying Plaintiff's claim, the Commissioner considered affective disorders and disorders of back, discogenic and degenerative, as possible bases for disability. (*Id.*)

Plaintiff's case has a rather lengthy history which need not be completely recited here. After the instant case was filed in the district court, the case was remanded, at the request of the Commissioner, because the hearing tape was blank. (ECF 31 at 11.) On remand, Administrative Law Judge ("ALJ") Lawrence Blatnik found that Plaintiff was not disabled for Disability Insurance Benefits ("DIB") purposes, i.e., was not disabled prior to June 30, 2004, but, in a concurrently filed opinion, found that Plaintiff was disabled for Supplemental Security Income ("SSI") purposes in January 2009. (Tr. at 20; ECF 31 at 15.) The instant case was reopened on February 8, 2011, and only the unfavorable DIB decision is under review at this time.

**B.    Standard of Review**

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S.

---

[2]Since this particular portion of the transcript was filed separately as a supplement, it will be referred to by its Electronic Case Filing ("ECF") number. All other transcript references are to the originally filed transcript. (Docs. 14-17.)

521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r*

4

*of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the DIB program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the SSI program of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

5

> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [her] impairments and the fact that [she] is precluded from performing [her] past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [her] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.   ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity during the period of her alleged onset date of February 24, 2002, through her date last insured of June 30, 2004. (Tr. at 14.) At step two, the ALJ found that Plaintiff's degenerative disc disease of the lumbar spine,

6

headaches, sleep apnea, and depression were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 15.) At step four, the ALJ found that Plaintiff could not perform any of her past relevant work. (Tr. at 18.) The ALJ also found that on the alleged disability onset date, Plaintiff was a younger individual age 18 to 44 and that on March 22, 2004, Plaintiff's age category changed to a younger individual age 45 to 49. (*Id.*) At step five, the ALJ found that Plaintiff could perform a limited range of sedentary work. (Tr. at 15-18.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 20.)

### E. Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff had "episodic lower back pain [that] started at the age of 13." (Tr. at 518.) Plaintiff was involved in a car accident in February 2002. On the day of the accident, based on Plaintiff's reported pain, x-rays of Plaintiff's right elbow, right foot, and both ankles showed no evidence of fracture or malignment. (Tr. at 451-52.) An x-ray of Plaintiff's cervical spine was normal and showed no signs of soft tissue swelling, but based on Plaintiff's reported "low cervical spine tenderness," a CT scan was recommended. (Tr. at 453.) In addition, x-rays of Plaintiff's lumbosacral spine, thoracic spine, and left hip and pelvis showed no evidence of fracture or malignment. (Tr. at 453-54.)

On March 6, 2002, Plaintiff underwent an MRI of her lumbosacral spine, which was "the same and there were no significant changes" from the "previous abnormal MRI findings at the T11-T12 level." (Tr. at 459.) The MRI showed "[n]o lumbar disc herniation, spinal canal stenosis or foraminal stenosis." (Tr. at 594.)

7

On April 10, 2002, Terry D. Howell, M.D., wrote a letter indicating that Plaintiff was "being treated for chronic back pain, which has intensified after being involved in a motor vehicle accident" and that "[d]ue to her current health condition, [Plaintiff] is unable to perform janitorial services." (Tr. at 566.)

On April 23, 2002, Steven Harwood, M.D., examined Plaintiff and reviewed the results of an MRI taken on March 6, 2002. Dr. Harwood noted that there were "very minimal degenerative changes seen at L4 and L5/S1" and that there was "some protrusion of the disc at T11/T12 unchanged from before . . . [but that t]here was no other indication of any problem with the disc in the lower back or any type of nerve root encroachment." (Tr. at 482.) Dr. Harwood also found "[n]o evidence of lumbar radiculopathy." (Tr. at 483.)

On May 29, 2002, Dr. Harwood examined Plaintiff and found she was "normal" for sensory and tone in her lower extremities, that her reflexes were normal, that she could "flex about 70% of normal," and that her gait was normal. (Tr. at 478.) Dr. Harwood concluded that Plaintiff had "some underlying degenerative disc disease on MRI scan, but no evidence of a disc rupture" and "no evidence of a lumbar radiculopathy." (Tr. at 479.) Dr. Harwood recommended aquatic therapy and concluded that neither a TENS unit nor local injections were needed. (*Id.*)

On July 12, 2002, Dr. Harwood recommended aquatic therapy and noted that Plaintiff "does have a history of back pain, so I am not sure it will take it all away, but just get her back to her baseline." (Tr. at 477.) On August 28, 2002, Dr. Harwood indicated that Plaintiff was under his care and that she was currently unable to perform the duties of her regular job and that she would be re-examined in October. (Tr. at 476.) On October 4, 2002, Dr. Harwood found that Plaintiff "maintains a normal motor exam." (Tr. at 474.)

8

In August 2002, H. J. Kim, M.D., examined and evaluated Plaintiff and found that Plaintiff "has an old low back disorder and claims to have increased pain after the car accident. However, the clinical findings and the MRI study did not reveal any new findings . . . ." (Tr. at 460.) Dr. Kim indicated that "[t]hrough my examination, besides her subjective pain and tenderness, I was unable to identify any significant objective findings to constitute any physical impairment from her spine and extremities." (Tr. at 460.) Dr. Kim concluded that Plaintiff "should be able to return to her previous level of work activities without any contraindication, such as a janitor." (Tr. at 460.)

On October 25, 2002, James E. Sander, M.D., performed a neurological examination that was normal. (Tr. at 495.) On November 18, 2002, Dr. Sander indicated that he "put [Plaintiff] off of work because of increased pain after the accident from the time that I saw you until the first of June . . . because of continued soft tissue complaints . . . ." (Tr. at 494.) He went on to state that "[s]ince there is no additional injury noted on your films, pre and post accident, I am therefore assuming that your complaints are soft tissue in nature, as you have no specific neurologic deficit that would require a neurosurgical operation." (*Id.*)

On January 15, 2004, an MRI of the lumbar spine revealed "[c]entral disc herniation at T11-12 resulting in moderate central canal stenosis." (Tr. at 516.)

In April 2004, Matthew Smuck, M.D., examined Plaintiff and recommended that she be referred to a migraine clinic for treatment of headaches but stated that he was sorry that he could not "be of any significant help from the surgical standpoint, but I feel strongly that surgery in [Plaintiff's] case would be contraindicated." (Tr. at 513.) On April 26, 2004, x-rays of the pelvis and left hip were normal. (Tr. at 589.)

A physical residual functional capacity ("RFC") assessment was completed on March 25, 2005, for the period between the alleged onset date of February 24, 2002, and the date last insured

of June 30, 2004. The RFC indicated that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and was unlimited in her ability to push or pull. (Tr. at 605.) Plaintiff was found to be occasionally limited in all the postural areas, and unlimited in the manipulative, visual, communicative and environmental areas. (Tr. at 606-08.) The assessment concluded that Plaintiff's "statements appear partially credible" because the "available MER does not support the degree of impairment alleged." (Tr. at 609.)

A psychiatric review technique completed on March 25, 2005, for the period between the alleged onset date of February 24, 2002, and the date last insured of June 30, 2004, concluded that Plaintiff had an affective disorder, i.e., dysthymic disorder, shown by "sad mood, crying spells, [and] sleep disruption at times." (Tr. at 612, 615.) The assessor found that Plaintiff was mildly limited in her activities of daily living, moderately limited in maintaining concentration, persistence and pace, and unlimited in maintaining social functioning. (Tr. at 622.)

A mental RFC assessment found that there was no evidence of limitation as to Plaintiff's ability to remember locations and work-like procedures or to understand and remember very short and simple instructions, but that Plaintiff was moderately limited in her ability to understand and remember detailed instructions. (Tr. at 627.) Similarly, the assessment concluded that there was no evidence of limitation in Plaintiff's ability to carry out very short and simple instructions, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, or to make simple work-related decisions. (Tr. at 627.) Plaintiff was found to not be significantly limited in her ability to carry out detailed instructions or perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances but was moderately limited in her to maintain attention and concentration for

extended periods and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of rest periods. (Tr. at 627-28.) With respect to social interaction and adaption abilities, Plaintiff was found to either not be significantly limited or there was no evidence of limitation in these areas. (Tr. at 628.) The assessment concluded that Plaintiff is "capable of simple repetitive tasks on a consistent and effective basis" and that her "depression is not a significant source of dysfunction." (Tr. at 629.)

### F.    Analysis and Conclusions

#### 1.    Legal Standards

In order to be eligible for disability benefits, a person must become disabled during the period in which he or she has met the statutory special earnings requirements. 42 U.S.C. §§ 416(i), 423(d)(1)(A). Federal courts have therefore held that "[m]edical evidence is relevant to prove a disability only while the claimant enjoyed insured status. However, medical evidence that postdates the insured status may be, and ought to be, considered insofar as it bears on the claimant's condition prior to the expiration of insured status." *Anderson v. Comm'r of Soc. Sec.*, 440 F. Supp. 2d 696, 699 (E.D. Mich. 2006) (citing *Estep v. Weinberger*, 525 F.2d 757 (6th Cir. 1975); *Davis v. Califano*, 616 F.2d 348 (8th Cir. 1979); and *Begley v. Matthews*, 544 F.2d 1345, 1354 (6th Cir. 1976)).

The ALJ determined that during the time she qualified for benefits, Plaintiff possessed the residual functional capacity to perform a limited range of sedentary work. (Tr. at 15-18.) Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job

duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a)(1991). Social Security Ruling 83-10 clarifies this definition:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

SSR 83-10.

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2.     Substantial Evidence

As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

As indicated earlier, the relevant time period for purposes of this appeal is limited to February 2002 through June 2004. Although Plaintiff bases the onset date on having been in a car accident in 2002, I suggest that the evidence does not support her allegation that the event caused her to be disabled during the period of February 2002 through June 2004. Although Plaintiff reported pain on the day of the car accident, x-rays of Plaintiff's right elbow, right foot, and both ankles showed no evidence for fracture or malignment. (Tr. at 451-52.) An x-ray of Plaintiff's cervical spine was normal and showed no signs of soft tissue swelling but, based on Plaintiff's

reported "low cervical spine tenderness," a CT scan was recommended. (Tr. at 453.) In addition, x-rays of Plaintiff's lumbosacral spine, thoracic spine, left hip, and pelvis showed no evidence of fracture or malignment. (Tr. at 453-54.) In March 2002, an MRI of her lumbosacral spine was "the same and there were no significant changes" from the "previous abnormal MRI findings at the T11-T12 level." (Tr. at 459.) The MRI showed "[n]o lumbar disc herniation, spinal canal stenosis or foraminal stenosis." (Tr. at 594.)

Although Dr. Howell opined on April 10, 2002, that Plaintiff was "unable to perform janitorial services[,]" Dr. Howell did not state that Plaintiff was unable to perform sedentary work nor did Dr. Howell indicate that Plaintiff was permanently unable to perform janitorial services. (Tr. at 566.)

As of April 2002, Dr. Harwood's assessment of Plaintiff, after having reviewed an MRI taken one month earlier, was that there were "very minimal degenerative changes seen at L4 and L5/S1" and that there was "some protrusion of the disc at T11/T12 unchanged from before . . . [but that t]here was no other indication of any problem with the disc in the lower back or any type of nerve root encroachment." (Tr. at 482.) Dr. Harwood also found "[n]o evidence of lumbar radiculopathy." (Tr. at 483.) On May 29, 2002, Dr. Harwood found Plaintiff to be "normal" for sensory and tone in her lower extremities, found that her reflexes were normal, that she could "flex about 70% of normal," and that her gait was normal. (Tr. at 478.) Dr. Harwood concluded that Plaintiff had "some underlying degenerative disc disease on MRI scan, but no evidence of a disc rupture" and "no evidence of a lumbar radiculopathy." (Tr. at 479.) Although Dr. Harwood opined in August 2002 that Plaintiff was currently unable to perform the duties of her regular job, when he re-examined her in October 2002, he concluded that Plaintiff "maintains a normal motor exam." (Tr. at 474, 476.)

In August 2002, Dr. Kim noted that, after the car accident, the clinical findings and the MRI study did not reveal any new findings. (Tr. at 460.) Dr. Kim indicated that "[t]hrough my examination, besides her subjective pain and tenderness, I was unable to identify any significant objective findings to constitute any physical impairment from her spine and extremities." (Tr. at 460.) Dr. Kim concluded that Plaintiff "should be able to return to her previous level of work activities without any contraindication, such as a janitor." (Tr. at 460.)

In November 2002, Dr. Sander indicated that he "put [Plaintiff] off of work because of increased pain after the accident from the time that I saw you until the first of June . . . because of continued soft tissue complaints . . . ." (Tr. at 494.) He went on to state that "[s]ince there is no additional injury noted on your films, pre and post accident, I am therefore assuming that your complaints are soft tissue in nature, as you have no specific neurologic deficit that would require a neurosurgical operation." (*Id.*) In April 2004, Dr. Smuck confirmed Dr. Sander when he indicated that he felt "strongly that surgery in [Plaintiff's] case would be contraindicated." (Tr. at 513.)

I therefore suggest that the objective medical evidence from February 2002 through June 2004 provides substantial evidence for the ALJ's conclusion that Plaintiff was not disabled. I further suggest that the hypothetical posed to the vocational expert properly incorporated the limitations found in the mental and physical RFC assessments and that the hypothetical was in harmony with the objective record medical evidence. *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

### 3. Conclusion

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                 s/ *Charles E Binder*
                                          CHARLES E. BINDER
Dated: October 12, 2011                 United States Magistrate Judge

**CERTIFICATION**

    I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System, and served on the following non-ECF participant via the United States Postal Service: Laura Strzelecki, 9615 Beecher Rd, Pittsford, MI 49271-8603.

Date:  October 12, 2011　　　　　　　　　　　　By    s/Patricia T. Morris
　　　　　　　　　　　　　　　　　　　　　　　　Law Clerk to Magistrate Judge Binder